## THELMA LOUISE FORD *v.* STATE OF MARYLAND

[No. 202, Initial Term, 1967.]

176

*Decided February 16, 1968.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Alan M. Resnick* and *R. Roland Brockmeyer* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Frank A. De-Costa, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The Appellant, Thelma Louise Ford, was convicted of assault with intent to murder her husband, by Judge J. Gilbert Prendergast, sitting without a jury, in the Criminal Court of Balti-

more and after a Motion for a New Trial had been denied, sentenced to serve not more than six years in the Maryland Correctional Institution for Women.

The husband testified that early in the evening of May 5, 1966, he and his wife had an argument in their home over her former boyfriend. He then left the house and upon his return about 9:00 P.M., she remonstrated with him concerning his accusations and, thereupon, picked up a gun from the top of a dresser and shot him twice—one bullet entering his left arm and one his neck. He ran to the front door and when it would not open, he broke a window pane and jumped out into the street.

The wife testified that when her husband returned to the house at 9:00 P.M. he started arguing about the former boyfriend again, began beating her, tore her nightgown, then pulled out a gun and threatened to kill her and the children. She managed to wrestle the gun from him and even though she shot him he continued to beat her whereupon she laid the gun on the dresser and ran out the back door.

The police arrived about 9:30 P.M., saw the husband lying on the sidewalk in a pool of blood; saw the broken window and then entered the house. The Appellant, who was described by a police officer as crying, upset and wearing a nightgown which was torn, told him that she had shot her husband and showed him the gun on the dresser. The officer observed a trail of blood leading from the bedroom to the front door, then over a sofa and out through the broken window to the street where the husband was lying.

The officer testified that the Appellant's mother arrived shortly after he got there. He was asked on cross examination by Appellant's counsel what the Appellant had told her mother about the shooting in his presence. The trial court ruled that such a statement by the Appellant was not a part of the *res gestae*, and, therefore, not admissible. In this appeal, it is contended that the trial court erred in not permitting this testimony.

In *Reckard v. State*, 2 Md. App. 312, this Court stated (at p. 316):

"* * * Whether a declaration is a part of the *res gestae* depends upon whether the declaration repre-

sented the facts talking through the party or whether the party was talking about the facts, since *res gestae* comprehends a situation which presents an occurrence sufficient to produce a spontaneous and instinctive reaction under such circumstances as to show a lack of forethought or deliberate design on the part of the declarant.

"To constitute *res gestae* an utterance need not in all strictness be contemporaneous, in the sense of simultaneous, with the principle act; it may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and be dissipated by meditation."

Measured by this standard, we cannot say that the trial judge was in error in excluding the officer's testimony concerning the Appellant's statement to the mother made in his presence. When the mother arrived on the scene, the Appellant had already advised the police that she had shot her husband. Thus, the statement to her mother, given in the presence of the police officer, was the second narration of the circumstances surrounding the shooting. We cannot say, therefore, that the statement was not "dissipated by meditation." Thus, it was properly excluded.

In any event, the contention would seem to be moot since later on in the cross examination of the officer he was asked by Appellant's counsel:

"Q. Besides being worried about her children, when her mother came in, what did she say about the shooting of her husband?
A. I don't recall."

In addition, the mother was called to the stand on behalf of the Appellant and permitted to relate what she had been told by the Appellant regarding the shooting.

The Appellant also contends that there was no legally sufficient evidence to sustain the conviction. We disagree.

The trial judge was under no obligation to believe the Appellant's version of the shooting, *Logan v. State,* 1 Md. App. 213; and he was free to accept that of the victim. The function

of this Court in reviewing the legal sufficiency of the evidence in a non-jury trial is to determine whether the record shows any relevant evidence and proper inferences therefrom upon which the trial judge could properly find the accused guilty. *McFadden v. State,* 1 Md. App. 511, 517. The record before us shows ample evidence to sustain the conviction.

*Judgment affirmed.*