## WAYNE TIMOTHY TROUT *v.* STATE OF MARYLAND

[No. 123, September Term, 1967.]

Decided February 27, 1968.

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

Donald J. Gilmore for appellant.

Thomas S. Glass, Special Attorney, with whom were Fran-
cis B. Burch, Attorney General, Frank H. Newell, III, State's
Attorney for Baltimore County, and Richard D. Byrd, Assis-
tant State's Attorney for Baltimore County, on the brief, for
appellee.

PER CURIAM.

The Appellant, Wayne Timothy Trout, was convicted of sec-
ond degree murder in the Circuit Court for Baltimore County,
by Judge John E. Raine, Jr., sitting without a jury, and sen-
tenced to eighteen years in the Maryland Penitentiary.

In this appeal, the sole question is whether the evidence was
legally sufficient to sustain the conviction.

The record indicates that on March 24, 1966, at approxi-
mately 6:00 P.M., Mrs. Virginia Trout, the wife of the Appel-
lant, was fatally wounded by a .22 caliber bullet that penetrated
the cavity of her left eye on an upward trajectory and at an
angle of about 50 degrees from left to right.

A downstairs neighbor of Mr. and Mrs. Trout, Mr. Joseph
Sullivan, testified that on the evening in question he heard a
noise and then heard footsteps running across the floor up-
stairs and down the steps. The Appellant then came to the back
door of Mr. Sullivan's apartment and said that his wife had
been fooling with a gun and that the gun "went off" and asked
Mr. Sullivan to call an ambulance. Having called the ambu-

lance, Mr. Sullivan again met the Appellant coming down the stairs with his four year old daughter and a pistol in his hand. The Appellant's daughter and the gun were then taken by Mr. Sullivan to his mother's house. He then returned to the Trout apartment as the ambulance arrived. When the police reached the scene they placed both Mr. Sullivan and the Appellant in the Sullivan apartment where they were kept for approximately an hour and a half before being taken to the Towson Police Station.

The testimony of several witnesses indicated that the Appellant was hysterical, sobbing and completely bewildered. He was so upset that as late as 7:30 P.M. he apparently was not capable of giving his own name. For a period of several hours following Mrs. Trout's death the Appellant repeatedly stated that his wife was twirling the pistol on her finger and the pistol discharged, causing her accidental death.

Testifying at the trial the Appellant stated that his four year old daughter was playing with the pistol and it was discharged accidentally when he attempted to take the pistol away from her.

Mr. George A. Berley, a weapons expert employed by the Federal Bureau of Investigation, testified concerning the mechanical functioning of the pistol which fired the fatal shot. He stated that the slide on the top of the automatic pistol had to be pulled back to cock the pistol; that the trigger had to be pulled and held in order to discharge the bullet; and that in his opinion, the pistol could not have been discharged by twirling it on a finger.

Dr. Rudiger Breitenecker testified for the State that in examining the body of the victim, he found no evidence of powder or burning on the outside of the bullet wound but found abundant evidence of powder on the inside of the wound. Dr. Breitenecker stated that this fact proved that the pistol was discharged from either a position of direct contact with the victim's head or from a position within a fraction of an inch thereof.

On the facts presented the trial court rejected the possibility that the Appellant's four year old daughter could have fired the gun. The Court also rejected as physically impossible the proposition that the victim could have inflicted the wound upon her-

self by twirling the gun on her finger. The trial court stated, "It therefore left this defendant, by a process of elimination, as being the person who fired the fatal shot. The Defendant spontaneously and as part of the *res gestae* kept repeating that the wife was fooling with the gun and it went off. Now he takes the stand and says that the little girl had the gun, that when he took the gun away from the child it went off and shot the wife. I do not believe that the shooting could have occurred in the manner that the defendant described."

Since the instant case was tried by the lower court sitting without a jury, this court may review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless we are convinced that it was clearly erroneous, and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. Md. Rule 1086. *Spencer v. State,* 1 Md. App. 264; *Carwell v. State,* 2 Md. App. 45.

The function of this Court is not to determine whether the defendant, in our opinion, was guilty beyond a reasonable doubt, but rather our function is to determine from the evidence and the proper inferences drawable therefrom, whether there was sufficient evidence to warrant the finding of the lower court that the defendant was guilty beyond a reasonable doubt. *Abney v. State,* 244 Md. 444, and *Spencer v. State, supra.* Clearly the trial judge was under no obligation to believe the statements of the accused. *Weaver v. State,* 226 Md. 431; *Tingler and Wright v. State,* 1 Md. App. 389.

Applying the above principles of law to the facts as revealed by the record here, we find that the trial judge was not clearly in error in finding the Appellant guilty of second degree murder.

*Judgment affirmed.*