## WILLIAM RASNICK *v.* STATE OF MARYLAND

[No. 482, September Term, 1968.]

*Decided August 19, 1969.*

The cause was argued before MURPHY, C. J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Solomon Reddick* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Stephen Gary Gilden, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

The original conviction of William Rasnick, the appellant, for murder in the first degree, was reversed by this Court because the evidence was insufficient, *Rasnick v. State,* 4 Md. App. 114, 241 A. 2d 420. After remand, the case was removed to Baltimore County and tried before a jury. In the second trial, John N. Maguire, the trial judge, granted a motion for acquittal as to first degree murder, and the jury convicted for murder in the second degree. A sentence of twenty years was imposed. On appeal, Rasnick raises numerous contentions which are listed hereinafter. The evidence presented at the second trial was substantially the same as that at the first, a more complete statement of which was set out in *Rasnick v. State, supra.*

## I   The Sufficiency of the Evidence

There appears to have been only one eyewitness, who testified that on the late afternoon of August 1, 1966,

while he was sitting on the steps at 102 North Washington Street in Baltimore, he observed the deceased come out of a bar with Rasnick about ten feet behind him. Rasnick yelled to the deceased to stop, but instead the deceased went across the street where there was an argument between the two. The witness observed Rasnick hit the deceased, knocking him over some steps. After the deceased got up, the witness heard him yell, "He is robbing me. Help, he is robbing me." He then saw Rasnick either strike or throw the deceased over the steps again. The witness also saw Rasnick, standing over the deceased, raise his foot several times, but since the steps blocked his view, the witness could not see what Rasnick did when he lowered his foot. Rasnick walked away.

Apparently, the aforegoing affair occurred after the two had spent the afternoon together drinking. The medical examiner testified that death was caused by head injuries inflicted by a blunt impact.

Rasnick contends that the evidence was insufficient because although the deceased died some seven days after the incident described above, the prosecution made no showing that the deceased was not otherwise injured in the intervening period. There is nothing to suggest there was any injury during this period, and it seems most unlikely from reading the testimony there were any injuries other than those resulting from the beating by Rasnick. We point out that the State is not obligated to negative every miraculous circumstance that could have occurred.

Rasnick argues further, since he testified that the deceased had fallen down a flight of steps earlier in the day on August 1, 1966, and since the doctor testified it was possible that the fatal injuries could have occurred at that hour, this possibility sufficiently negatived the inference that the blows of the head against the sidewalk, described above, were the cause of death beyond a reasonable doubt. We point out, there is no obligation on the trier of the facts to believe the testimony that there

was an earlier fall. *Gardner and Maple v. State,* 6 Md. App. 483, 251 A. 2d 901; *Love and Matthews v. State,* 6 Md. App. 639, 252 A. 2d 493; *Brown and Shepard v. State,* 6 Md. App. 631, 252 A. 2d 887.

Rasnick further argues that the testimony of the eye-witness was conflicting, but we have read the testimony and see no substantial conflicts therein within the meaning of *Kucharczyk v. State,* 235 Md. 334, 201 A. 2d 683.

Rasnick further argues that the facts surrounding the altercation between Rasnick and the deceased do not show malice as required for a conviction of murder in the second degree. We think the knocking of a man's head against the sidewalk is sufficient to show malice within the rule which permits malice to be inferred from directing a weapon at a vital part of the body. *Smith v. State,* 6 Md. App. 114, 250 A. 2d 272; *Bagley v. State,* 6 Md. App. 375, 251 A. 2d 246.

Finally, Rasnick contends that he acted in self-defense. The only evidence of self-defense was that supplied by Rasnick's own testimony and we repeat there is no obligation on the trier of the facts to accept the testimony of the accused.

## II   The Autopsy Report

Rasnick contends it was error to admit the autopsy report, over his objection, because it contained statements made by witnesses to the medical examiner.

Md. Code, Art. 22, § 8 provides in part as follows:

> "It shall be the duty of the chief medical examiner, and the deputy medical examiners, to keep full and complete records in their respective offices, properly indexed, giving the name, if known, of every such person, the place where the body was found, date and cause of death, and all other available information relating thereto. . . . The records of the office of the chief medical examiner, and of the several deputy medical examiners, made by themselves or

by anyone under their direction or supervision, or transcripts thereof certified by such medical examiner, shall be received as competent evidence in any court in this State of the matters and facts therein contained. . . . The records which shall be admissible as evidence under this section shall be records of the results of views and examinations of or autopsies upon the bodies of deceased persons by such medical examiner, or by anyone under his direct supervision or control, and *shall not include statements made by witnesses or other persons.* (Italics added)

The portion of the medical examiner's report to which objection was made reads as follows: "Manner of Death: Homicide knocked to ground and kicked." "Time of Injury: About 7:30 p.m. 1 August 1966." "Place of Injury: Fairmount and Washington Street." The record discloses this information was furnished by witnesses and was not the result of examinations by the medical examiner or his assistants; therefore, it does not seem to be within the language of the statute. Since, however, the information was brought out in oral testimony, we think this portion of the report was merely cumulative hearsay and its admission, if erroneous, was harmless. *Ferrier v. State*, 5 Md. App. 553, 248 A. 2d 501, and cases cited therein. Although the eyewitness did not see the kicking, we think his testimony was sufficient to raise an inference thereof.

### III   Photographs

Over objection, the trial judge admitted pictures of the brain and skull which were taken during the autopsy for the purpose of illustrating how the injuries had affected the brain. It would appear that the pictures were admissible under the statute, *supra.* The admissibility of pictures in any case is a matter that is left to the discretion of the trial judge and the case will not be re-

versed on appeal in the absence of abuse thereof. *Gray v. State,* 6 Md. App. 677, 253 A. 2d 395; *Carder v. State,* 5 Md. App. 531, 248 A. 2d 495; *McLaughlin v. State,* 3 Md. App. 515, 240 A. 2d 298. Although we see little purpose served by the admission of the photographs after the doctor testified as to the brain injuries, we cannot say the trial judge abused his discretion, or indeed, that Rasnick was in any way prejudiced by their introduction.

### IV Admission of Testimony as to Words Spoken During the Altercation: "Help, he is robbing me."

In *Hall v. State,* 5 Md. App. 599, 249 A. 2d 217 we carefully reviewed the law and held that generally all words spoken during the commission of a crime are admissible in evidence.

### V The Arraignment

Rasnick contends that fatal error was committed when he was not rearraigned after the original trial was reversed and the case was remanded for a new trial. Although the first arraignment is usually considered mandatory, *Ayala v. State,* 226 Md. 488, 174 A. 2d 160, we are aware of no rule that requires a rearraignment after an original conviction has been reversed. *Young v. State,* 220 Md. 95, 151 A. 2d 140 held that a rearraignment was not necessary after an amendment to an indictment. *Davis v. State,* 39 Md. 355 held that a rearraignment was not necessary after a case had been removed from one county to another. Professor Wharton in 4 Wharton *Criminal Procedure,* § 18.02 cites a number of cases to support the proposition that once an accused has been arraigned, a rearraignment is not necessary for a second trial. He cites no cases to the contrary. Since the purpose of an arraignment is simply to inform the accused of the charges against him, we think that after he has once been arraigned, gone through a complete trial, and the conviction has been reversed on appeal, an accused

is sufficiently informed of the charges within the spirit of *Ayala v. State, supra.*

## VI  Double Jeopardy

Rasnick contends that he was placed in double jeopardy because he was forced to retrial on a charge of murder in the first degree after this Court had reversed a conviction of that charge by reason of insufficient evidence. See *Gray v. State,* 254 Md. 385. Since the trial judge granted a motion to acquit as to murder in the first degree, the question is moot. Even though a retrial on murder in the first degree is precluded under some circumstances, *e.g.* an acquittal at the first trial, that does not mean the accused cannot be retried for second degree murder or manslaughter under the same indictment, *State v. Barger,* 242 Md. 616, 220 A. 2d 304.

## VII  Deposition of Witness

Rasnick alleges error in the failure of the trial judge to permit him to take the deposition of the chief prosecuting witness. *Kardy v. Shook,* 237 Md. 524, 207 A. 2d 83 held an accused had no right to take pretrial depositions of prosecuting witnesses. Since the witness had testified at the preceding trial, we are unable to see how a deposition in this case could have been of any value.

## VIII  Mental Examination of Witness

Prior to trial, Rasnick filed a motion to require the chief prosecuting witness to submit to a mental examination to determine his competency to testify because he was at least 75 years of age. The competency of a child to testify is primarily for the trial judge to determine, *Jacobs v. State,* 6 Md. App. 238, 251 A. 2d 33; *Watson v. State,* 6 Md. App. 134, 250 A. 2d 311; *Reckard v. State,* 2 Md. App. 312, 234 A. 2d 630, and perhaps a similar rule should apply to the aged. If the court saw fit it could perhaps require a mental examination in making the determination, but we know of no right in the accused to thus harass prosecuting witnesses, particularly where

the only basis for the request is that the witness is 75 years of age. Persons of that age and over have made many contributions to our civilization. Some such persons have led great nations in the times of war and other crises.

*Judgment affirmed.*